<hr />

Iva B. Cutting et als., In Equity,

*vs.*

Joseph B. Haskell et als.

Oxford.    Opinion April 16, 1923.

*Declarations made subsequent to the execution of a declaration of trust as bearing on the purpose and intention of the declarant are inadmissible. Beneficiaries under a trust instrument, after the trust ceases, and their contingent interest in the trust estate has ceased, cannot in their behalf have an accounting by the trustee.*

In the instant case the declarations of Peter N. Haskell made by him after the transaction as tending to show his purpose and intention are inadmissible.

The Trustee was to hold for twenty years with the powers specified, for the possible benefit of the grandchildren.

At the expiration of twenty years the trust ceased and the trust property undisposed of passed to the children who were the "other heirs" in the mind of Peter N. Haskell. They are now the rightful owners.

The bill alleges an excessive cutting of timber by the Trustee and asks an accounting in behalf of the grandchildren. As their contingent interest in the property has ceased, no accounting in their behalf can be had. But to avoid delay, the cause may be remanded in order that a master be appointed and such an accounting had if the children move therefor. Otherwise final decree may be entered for conveyance by the trustee to the children.

On report. A bill in equity asking for the construction of a trust deed given December 29, 1901, by Peter N. Haskell of Waterford, to his son, Joseph B. Haskell, conveying certain real estate in trust for a term of twenty years, with a provision that should any grandchild of the said Peter N. Haskell during the continuance of the trust

"come to want or stand in absolute need of pecuniary aid" the trustee could dispose of such part of the premises as would enable him to render the assistance needed in accordance with his discretion, up to an amount for each grandchild not exceeding three hundred dollars, and with a further provision that "and on the fulfillment of this the residue is to be equally divided among the other heirs." The cause was heard upon bill, answers, replications, and proofs, and at the conclusion of presentation of the evidence, by agreement of the parties, the case was reported to the Law Court with certain stipulations as to costs. Cause remanded. Decree in accordance with opinion.

The case is fully stated in the opinion.

*Frederick R. Dyer*, for complainants.

*Walter L. Gray*, for Clementine B. Rolfe and Georgia A. Haggett.

*Eugene F. Smith*, for Joseph B. Haskell, Etta M. Towne, Effie Towne, Mabel Lorenz, Grace DeLos Haskell, Harland P. Haskell and Andrew Johnson Haskell.

*J. Bennett Pike*, for Bertella A. Flagg.

*Benjamin L. Berman*, for Lillian A. Millett.

*E. A. Turner*, for Arthur Patten.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

CORNISH, C. J. Peter N. Haskell was a resident of Waterford, Maine, on December 29, 1901, and was the owner of several pieces of timber land in that town. He had other real estate including his dwelling, the homestead farm of one hundred and fifty acres, mill machinery, water privilege and also a certain amount of money. His legal heirs were his five children, Joseph B. Haskell, Clementine B. Rolfe, Georgia A. Haggett, Etta M. Towne and Andrew Johnson Haskell, all of whom are now living and are named as defendants in this bill. At that time he had eleven grandchildren, ten of whom are now living and are named in the bill either as plaintiffs or defendants. The eleventh grandchild is deceased and is survived by her husband also named as defendant. All the parties in interest are before the court in these proceedings in which the court is asked to construe a certain trust instrument and enforce the rights of the parties thereunder. The cause is on report.

On said December 29, 1901, Peter N. Haskell conveyed by warranty deed all his wild land to his son Joseph B. Haskell. Within a few days thereafter, and admittedly as a part of the same transaction, Joseph executed a declaration of trust of the following tenor:

"Now know ye that I the said Joseph B. Haskell do hereby declare that the aforesaid pieces & parcels of land aforesaid, & more fully described in the several deeds aforementioned were exclusively the lawful property of the aforesaid Peter N. Haskell, & that said deed was made to me the said Joseph B. Haskell only in trust for the benefit of the grandchildren of the said Peter N. Haskell, their heirs and assigns. That I and my heirs will stand and continue seized of said premises in trust for the grandchildren of the said Peter N. Haskell, & that neither I nor my heirs will grant, release or assign any part of said premises to any person except for the benefit of said grandchildren of said Peter N. Haskell by virtue of conditions hereafter mentioned. The said Trustee J. B. Haskell has power year by year to dispose of timber, the product of said premises sufficient to liquidate all taxes or incidental demands which may occur. If within the lapse of twenty years, the allotted time to which this Trust may be extended either or any number of the above named grandchildren of the said Peter N. Haskell should come to want or stand in absolute need of pecuniary aid the said Trustee shall have power to dispose of such part of said premises as to enable him to render the assistance needed in accordance with his discretion. The sum paid to each one not to exceed Three Hundred Dollars, & on fulfillment of this the residue to be equally divided among the other heirs."

This trust by its terms was to continue for the term of twenty years and therefore terminated on or about January 1, 1922. This bill was brought by and in behalf of the grandchildren who claim that the trustee should now convey the property to them, and against the children who also claim to own the same in fee simple.

This presents the issue, and the decision must depend upon the construction of the trust agreement itself, taking all its provisions together. It was drafted by an itinerant tinker, who was wont to attempt such work in the intervals between mending clocks and soldering tinware, and as might be expected it is somewhat inartificially expressed and yet we think its meaning is reasonably clear. Oral evidence was introduced under objection as to certain declarations made by Peter N. Haskell after this declaration of trust was

executed tending to show his intention and the purpose of the instrument. Such evidence was inadmissible and cannot be considered. *Barstow* v. *Tetlow*, 115 Maine, 96, 105; *Tibbetts* v. *Curtis*, 116 Maine, 336.

The will of Peter N. Haskell, dated October 24, 1900, a little more than a year before the trust agreement, was also introduced for the same purpose and was also inadmissible to prove intention.

What then is the fair interpretation of the trust agreement? We think it is this: That during the period of twenty years the trustee, Joseph B. Haskell, or his successor, should hold this wild land in trust for the benefit of the grandchildren, in case any of them during that time "should come to want or stand in absolute need of pecuniary aid." In such event the trustee was given power to dispose of such part of the premises as would enable him to render the assistance needed in accordance with his discretion, up to an amount for each one not exceeding three hundred dollars. Then follows the litigious clause "and on the fulfillment of this the residue is to be equally divided among the other heirs." What did he mean by "on the fulfillment of this" and by the "other heirs"? "On the fulfillment of this," means not on the payment of three hundred dollars to each grandchild, for there is no authority for such unconditional payment, but on the "fulfillment of this" trust agreement, the residue, that is the balance left in the hands of the trustee, after all the terms have been complied with and payments to needy grandchildren, if any, have been made, is to be equally divided among "the other heirs."

And who are meant by the "other heirs"? This must be other than the grandchildren themselves. To give it to them would be to give it to the same persons as were entitled to the limited stipend in case of need during the trust term. The "other heirs" in his mind must have been his children; strictly speaking, not heirs at that time but in the future his only heirs. In his plan he divided his descendants, or the scrivener did for him, into two classes of heirs, his grandchildren and his children. He evidently believed that these lots of wild land, which the evidence shows in 1901 were worth about $3,000, would materially increase in value, and he did not wish them disposed of unless absolutely necessary for a period of twenty years. During that time the trustee was to operate the land sufficiently to liquidate the taxes and incidental expenses. If any of

the grandchildren should fall into distress during that time the trustee could assist them up to $300 from the trust property. But the grandchildren were given no beneficial interest whatever unless they were in need. They were not to have $300 each at the expiration of the trust, nor any part of the corpus at that time. The agreement is designed for their conditional protection during the twenty years, but no longer. Their interest is conditioned upon their financial stress up to the $300 limit, and this financial stress is a condition precedent within the sound discretion of the trustee. Then at the expiration of the trust term, when all the grandchildren shall have reached majority, all the balance of the corpus belongs to the children, the parents of these grandchildren.

It is agreed that no payments have been made by the trustee to the grandchildren during these twenty years and that no part of the soil has been conveyed; so that the trust property remains intact, so far as acreage is concerned, and must now be conveyed to the children. They are the rightful owners.

The bill alleges that the trustee has cut an amount of timber from the premises far in excess of the quantity required to pay the taxes and other necessary expenses, and asks for an accounting, in behalf of the grandchildren.

As their contingent beneficial interest in the property has ceased, no accounting in their behalf can be had. The children in their answers do not ask for an accounting, but in order to avoid unnecessary litigation, as long as all the parties are before the court, the cause may properly be remanded in order that a master may be appointed and such an accounting had if the children, or any of them, move therefor, and the sitting Justice so orders. Otherwise final decree may be entered for conveyance by the trustee to the children.

Since the bill was evidently brought in good faith to determine the legal and equitable rights of all parties mentioned in the trust agreement, it is equitable that a single bill of costs for the plaintiffs and reasonable counsel fees for all solicitors in the case be allowed by the the sitting Justice and be paid from the trust property in such manner as the sitting Justice may determine.

> *Cause remanded.*
> *Decree in accordance with*
> *this opinion.*