BOARD OF COM'RS OF OKLAHOMA COUNTY et al. v. YOUNG.

*97 P. 2d 6.*

No. 28942.  Dec. 12, 1939.

Lewis R. Morris, County Atty., B. C. Logsdon, Asst. County Atty., J. Berry King, and George J. Fagin, all of Oklahoma City, for plaintiffs in error.

Smith & Harbison, of Oklahoma City, for defendant in error.

RILEY, J. J. M. Young commenced an action in the district court of Oklahoma county seeking reformation of two warranty deeds executed by him to the board of county commissioners of Oklahoma county, and cancellation of three instruments executed by the latter to R. E. Basore. The parties will be referred to as plaintiff, the board, and Basore, respectively.

Demurrers were sustained to plaintiff's original and first amended petitions. Plaintiff then filed a second amended petition alleging in substance that in April, 1926, without consideration, he executed a warranty deed conveying to the board of county commissioners a narrow strip of land along the north side of his property for the sole purpose of permitting the board to straighten a highway; that in June, 1927, he executed a second warranty deed whereby the same tract was more accurately described by metes and bounds; that it was the mutual intention of the plaintiff and the board that the original deed and the correction deed convey only an easement or right to use the land for highway purposes (only); that it was never the intention of the parties that a fee-simple title be conveyed; that upon abandonment for highway purposes they mutually intended the land should revert to plaintiff; that the board had always treated said deeds as conveying an easement only; and that plaintiff had no notice that the board claimed any interest other than easement until December 15, 1937, when the board executed three instruments to defendant Basore purporting to convey all the mineral interest under the strip described in plaintiff's correction deed.

Plaintiff further alleged the conveyances by the board to Basore are void, because (1) no motion, resolution, or order was ever passed by the board giving the chairman thereof the right to advertise and sell an oil and gas lease on said land; (2) that the notice of sale omitted material terms and conditions of the lease and was published for an insufficient time; (3) that no order, motion or resolution was ever passed by the board giving the chairman right to execute a mineral deed, nor was any notice of sale of said minerals ever published; (4) that no motion, order, or resolution was ever passed authorizing the chairman to execute a quitclaim deed to the minerals nor was notice of the same published; and (5) that the property upon which the oil and gas lease, the mineral deed, and the quitclaim deed to the minerals were executed was within the limits of and being used as a county public highway, which facts were fully known

to Basore at the time the conveyances were executed.

The board and Basore filed demurrers, which were overruled. Both defendants elected to stand thereon, and judgment was entered reforming the deeds executed by plaintiff to the board so that an easement for highway purposes only was granted, and the three instruments executed by the board to Basore were canceled. From said judgments, the defendants have timely and properly appealed.

Defendants contended that reformation of a deed will not be ordered where the petition on its face shows innocent third parties will be affected thereby.

It must be borne in mind that the issues in this appeal arise upon demurrer, whereby plaintiff's petition is to be liberally construed, and the truth of all facts well pleaded considered true. First State Bank of Vian v. Armstrong, 150 Okla. 60, 30 P. 763.

In this state of the record the defendants admit a mutual mistake was made whereby an instrument was executed purporting to convey a fee-simple title, whereas the agreement between the plaintiff and the board was that only an easement for highway purposes be conveyed, and in event the highway should ever be abandoned this tract conveyed would revert to the plaintiff.

We have not found a more concise elucidation of the principles governing equitable reformation of instruments on account of a mistake of law contained in Pomeroy's Equity Jurisprudence (4th Ed.) as follows:

"The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief. If there were no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction, the party who knew, or had an opportunity to know, the contents of an agreement or other instrument cannot defeat its performance or obtain its cancellation or reformation because he mistook the legal meaning and effect of the whole or of any of its provisions. Where the parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, then the above rule uniformly applies; equity will not allow a defense, or grant a reformation or rescission, although one of the parties—and as many cases hold, both of them—may have mistaken or misconceived its legal meaning, scope, and effect. The principle underlying this rule is that equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into a transaction, but which they might or even would have had if they had been more correctly informed as to the law,—if they had not been mistaken as to the legal scope and effect of their transaction. If an agreement or written instrument or other transaction expresses the thought and intention which the parties had at the time and in the act of concluding it, no relief, affirmative or defensive, will be granted with respect to it, upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied or expressed, even though it should be incontestably proved that their intention would have been different if they had been correctly informed as to the law. These rules are settled with perfect unanimity where one party has been mistaken in such a manner; they are also applied by very many cases where the same mistake is common to both the parties."

But the principle governing the facts of this case is stated in section 845, as follows:

"In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract, which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a

mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases; but the rule is not confined to these instances."

This principle has been approved in several cases by this court. Hudson v. Smith, 171 Okla. 79, 41 P. 2d 861, and cases therein cited.

The petition herein alleges facts sufficient on demurrer, to justify equitable relief unless Basore is an innocent purchaser for value. We now consider that contention.

Where a person claims protection as a bona fide purchaser, his title must be apparently perfect and good at law. 66 C. J. 1095. Defendants admit that no motion, order, or resolution was ever passed by the board authorizing its chairman to execute the mineral deed and the quitclaim deed to the mineral interests to Basore. Section 7660, O. S. 1931, 19 Okla. St. Ann. § 339, provides as to county commissioners:

"They shall have power:

"First. To make all orders respecting the property of the county, to sell the public grounds of the county and to purchase other grounds in lieu thereof; and for the purpose of carrying out the provisions of this section it shall be sufficient to convey all the interests of the county in such grounds when *an order* made for the sale and a deed is executed in the name of the county by the chairman of the board of commissioners, *reciting the order,* and signed and acknowledged by him for and on behalf of the county. * * *"

Both instruments are attached to the petition as exhibits and neither recites such an order. This provision of the statute is mandatory and the failure to comply therewith appears on the face of both instruments. They are void, a fact of which Basore had knowledge.

For another reason, all three instruments executed by the board to Basore are void, and the latter acquired no title to be protected under the theory of a bona fide purchaser.

It is admitted the tract was sold to the county for widening a highway. It is further admitted that at the time of filing the petition and ever since the conveyances from plaintiff the land had been used for public highway purposes. Under such circumstances, the tract was held by the board in trust for a specific public use, to wit, highway purposes. When land has been dedicated to use as a public highway in Oklahoma, any subsequent private use inconsistent therewith prior to its vacation in accordance with the provisions of section 10143, O. S. 1931, 69 Okla. St. Ann. § 363, is unauthorized. County commissioners do not have authority to abandon highways at will. They must proceed in accordance with legislative mandate, whence they derive all their powers, duties, and authority not provided by the Constitution.

By the lease and two deeds here involved, the board sought to grant to a private party, Basore, "* * * the right of * * * laying pipe lines, building tanks, power stations and structures, * * *" and the right to drill an oil well on the strip of land obtained from plaintiff. In the absence of a statute specifically granting such a power to the board of county commissioners or failure to comply with the provisions of such statutes, the exercise of such power is clearly against public policy and the act is unauthorized and void. The deeds so executed were void ab initio. Of this Basore had knowledge; hence, he acquired no title as a bona fide purchaser.

Defendants next contend plaintiff had no legal capacity to attack conveyances from the board to Basore after parting with fee-simple title to the property involved.

Several cases are cited in support of this contention, but these citations "involve situations where the evidence showed the title was actually conveyed." The very statement of this contention anticipates its answer. Plaintiff alleges,

and defendants, by demurrer, admit, the agreement was to convey only an easement, but through a mutual mistake of law an instrument was executed purporting to convey a fee-simple title, and that the board had attempted to convey title which the latter and plaintiff never agreed should be conveyed. The board further admits that the instruments executed by the plaintiff were treated by the board as conveying only an easement until the execution of the instruments to Basore, which was the first information plaintiff had that the board considered a fee-simple title had been conveyed. The plaintiff herein does not contend the county cannot properly take and use the land in question. Plaintiff's theory is that the board is attempting to convey a title which it never properly received, and that such an attempt has cast a cloud upon his title. Defendants' contention is untenable.

Defendants next contend that plaintiff's cause of action is barred by extreme laches. It is alleged and admitted that plaintiff had no notice of a claim adverse to the alleged original agreement until the instruments to Basore were executed. The first instruments are dated November 18, 1937. The original petition was filed December 28, 1937. In Parks v. Classen Co., 156 Okla. 43, 9 P. 2d 432, it was stated that laches will not be presumed from delay alone, where the delay is short of the period fixed by the statute of limitations. Laches, unlike the statute of limitation, is not a mere matter of time. To raise the question it must appear on the face of the petition that it would be inequitable to grant the relief prayed; such as an injury to the interests of a bona fide purchaser.

The petition herein reflects no such inequitable result. On the contrary, we have held the petition on its face shows that Basore is not an innocent purchaser. It cannot be said from the record herein that plaintiff is guilty of laches.

Defendants next contend the action is barred by the statute of limitations. The following language in Hudson v. Smith,

171 Okla. 79, 41 P. 2d 861, disposes of this contention:

"* * * The defendants claim that since the deed was executed in 1919, and suit not commenced until 1933, the action is barred. The statute could not commence to run until plaintiff became aware of a hostile claim, or a dispute as to his interest. The petition alleges that no hostile claim arose until less than one year prior to the commencement of the action. The plaintiff's right to an equitable adjudication of his title was a continuing one, and no statute of limitations could commence running until an adverse claim arose."

Finding no error in the judgment of the lower court, the same is hereby affirmed.

BAYLESS, C. J., and OSBORN, DAVISON, and DANNER, JJ., concur.